**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                      No. CR 07-1602 JB

SIMON HERRERA-GONZALEZ,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Sentencing Memorandum for Defendant Simon Herrera-Gonzalez, filed November 13, 2007 (Doc. 16); (ii) the Defendant Simon Herrera-Gonzalez' Reply to the United States' Response to Sentencing Memorandum, filed November 21, 2007 (Doc. 18); and (iii) the Addendum to Sentencing Memorandum for Defendant Simon Herrera-Gonzalez, filed December 21, 2007 (Doc. 22). The Court held a sentencing hearing on January 18, 2008. The primary issues are: (i) whether Herrera-Gonzalez' criminal history is overrepresented pursuant to U.S.S.G. § 4A1.3(b)(1), and whether he is more similar to defendants categorized in criminal history category III rather than in criminal history category IV; (ii) whether Herrera-Gonzalez should receive a departure based on Cultural Assimilation and Family Ties; (iii) whether he should receive a departure, pursuant to U.S.S.G. § 5K2.11, based on Lesser Harm; and (iv) whether the Court should vary from the advisory Guideline sentence. Because the Court believes that Herrera-Gonzalez' criminal history is overrepresented, it will depart under U.S.S.G. § 4A1.3, categorizing Herrera-Gonzalez' criminal history as III instead of IV. The Court believes, however, that Herrera-Gonzalez is not entitled to further departure from the advisory sentencing Guideline

range based on the reasons that he has provided.  The Court also believes, however, that it is appropriate to grant Herrera-Gonzalez a variance from the Guideline sentence to avoid disparity between Herrera-Gonzalez' sentence and those of other defendants with similar criminal backgrounds who have committed similar crimes.  Thus, the Court grants Herrera-Gonzalez a departure to a criminal history category of III and will vary from the advisory Guideline sentence to a sentence of 38 months imprisonment.

## PROCEDURAL BACKGROUND

On August 2, 2007, Herrera-Gonzalez pled guilty, without a plea agreement, to a one-count information charging a violation of 8 U.S.C. §§ 1326(a) and (b), that is, re-entry of a removed alien. See Sentencing Memorandum for Defendant Simon Herrera-Gonzalez at 1, filed November 13, 2007 (Doc. 16)("Sentencing Memo.").  After Herrera-Gonzalez pled guilty, the United States Probation Office ("USPO") prepared and disclosed a Presentence Investigation Report ("PSR").  See PSR, disclosed September 14, 2007.  The PSR calculated the total offense level at 21 and assigned Herrera-Gonzalez a criminal history score of 9, which resulted in a criminal history category of IV. See id. at 16.  Pursuant to the PSR, the Guideline range is 57 to 71 months.  See id., Part D, Sentencing Options at 17.

In Part E, on page 17, which addresses factors that may warrant departure, paragraph 55 of the PSR states:

> Pursuant to U.S.S.G. §§ 4A1.3, it appears the defendant's criminal history category is over-represented.  The defendant has a total of nine criminal history points, which results in a criminal history category of IV.  The defendant has two prior felony convictions, both of which occurred nearly 17 years ago.  Although the defendant has four prior misdemeanor convictions, two were for relatively minor traffic related offenses.  One of the defendant's misdemeanor convictions, Use or Possession of Drug Paraphernalia (Case No. CR-2006-353), resulted in five criminal history points, as he was assessed two points for the 274 day sentence imposed, two points for being under a criminal justice sentence, and one point for being in custody when the instant

offense occurred.  This appears to over-represent the defendant's prior criminal conduct.  It appears the defendant is more similar to defendants categorized in criminal history category III, rather than a criminal history of IV.  The United States Probation Office has not identified any other departure issues.

PSR ¶ 55, at 17.

On November 13, 2007, Herrera-Gonzalez submitted a Sentencing Memorandum, requesting that the Court take into consideration the information contained therein at the time of his sentencing.  Herrera-Gonzalez concurs that his criminal history category is significantly overrepresented.  See Sentencing Memo at 2.  He also requests a downward departure below the applicable Guideline range on other grounds and seeks a variance, pursuant to 18 U.S.C. § 3553(a) and United States v. Booker, 543 U.S. 220, 234 (2005).  See Sentencing Memo. at 2.

The United States responded to Herrera-Gonzalez' objections on November 14, 2007.  See United States' Response to Sentencing Memorandum, filed November 14, 2007 (Doc. 17)("Response").  The United States "concedes that criminal history category IV overrepresents [Herrera-Gonzalez'] criminal history."  Id. at 2.  The United States contends that Herrera-Gonzalez' request for a downward departure pursuant to U.S.S.G. § 4A1.3(b)(1) should be granted, reducing Herrera-Gonzalez' criminal history category to III.  See Response at 2.  The United States argues that  departures on the bases of cultural assimilation and family ties are not warranted.  See id. at 3.  The United States mentions that there is nothing extraordinary about Herrera-Gonzalez and that only extraordinary circumstances warrant departure based on cultural assimilation.  See id. at 3-4.  The United States also argues that Herrera-Gonzalez "has only assimilated into the worst of American culture" because he has "at least six prior convictions."  Id. at 4.  The United States contends that, because Herrera-Gonzalez has been known to use an alias, and "has not been an upstanding member of society," he has not assimilated into United States' culture.  Id.  The United States argues that

-3-

United States v. Booker and the 18 U.S.C. § 3553(a) factors do not counsel for a variance.   See Response at 5-7.

Herrera-Gonzalez replied to the United States' response on November 21, 2007.   See Defendant Simon Herrera-Gonzalez' Reply to the United States' Response to Sentencing Memorandum, filed November 21, 2007 (Doc. 18)("Reply").   Herrera-Gonzalez contends that he has culturally assimilated into the American culture because:

> He has spent over 30 years of his life in the United States, including his late teen years and twenties.   He has learned to speak English, raised his family and has worked for the better part of his life in the United States.  [Herrera-Gonzalez] was granted permanent residence status in March of 1977 which was subsequently revoked as a result of his felony conviction and deportation in 1993 . . . . It is true that there is nothing extraordinary about [Herrera-Gonzalez] living in the United States for over 30 years, except that it does raise the question of what it takes to be considered culturally assimilated by the government if learning the language, raising a family and working to support that family within that culture is not enough.

Reply at 3.   Herrera-Gonzalez renewed his request for a variance under the factors in 18 U.S.C. § 3553(a).   See Reply at 3-5.

On December 21, 2007, Herrera-Gonzalez submitted an addendum to his sentencing memorandum.   See Addendum to Sentencing Memorandum for Defendant Simon Herrera-Gonzalez, filed December 21, 2007 (Doc. 22).   Herrera-Gonzalez attached a document entitled "Memorandum on My Own Behalf" to his addendum.   Id. at 1-7 (Doc. 22-2).   Herrera-Gonzalez requests a downward departure under U.S.S.G. § 5K2.11, for "Lesser Harms,"  because he represents that he returned to the United States to aid his children and wife, and in doing so, acted to provide adequate food, clothing, and shelter.   See id. at 2.   Herrera-Gonzalez states that he was worried about his children growing up without a father.   See id.   Herrera-Gonzalez requests a variance under the 18 U.S.C. § 3553(a) factors.   See id. at 5-6.

The United States counters that a departure under U.S.S.G. § 5K2.11, for "Lesser Harms"

is unavailable in illegal reentry cases, because illegal reentry is not a specific intent crime.  See United States' Response to Defendant's Addendum to Sentencing Memorandum at 2, filed December 26, 2007 (Doc. 23)(citing United States v. Hernandez-Baide, 392 F.3d 1153, 1157-58 (10th Cir. 2004)("Given our determination § 1326 requires no specific motive or intent, we join those circuits which have considered § 5K2.11 in application to § 1326 and held that because § 1326(a) is not a specific intent crime, an alien's intent, motivation or reason for illegal entry into the country cannot serve as a basis for departure under § 5K2.11."); vacated by Hernandez-Baide v. United States, 544 U.S. 1015 (2005), opinion reinstated by United States v. Hernandez-Baide, 146 Fed.Appx. 302, 305 (10th Cir. 2005)).  The United States requests that the Court conclude that Herrera-Gonzalez is not entitled to further variance from the advisory Guideline range of 46 to 57 months.  See United States' Response to Defendant's Addendum to Sentencing Memorandum at 2, filed December 26, 2007 (Doc. 23)

The Assistant United States Attorney has not filed any objection to the PSR.  See Addendum to the Presentence Report at 1 (dated October 1, 2007).  On November 14, 2007, the USPO received Herrera-Gonzalez' sentencing memorandum, which included a request to depart one criminal history category.  See Second Addendum to the Presentence Report at 1 (dated November 14, 2007).  The USPO noted that the advisory Guideline range for an offense level of 21 combined with a criminal history category of III is 46 to 57 months, not the 37 to 46 month range suggested by Herrera-Gonzalez in his sentencing memorandum.  See id.  On November 28, 2007, the USPO responded to Herrera-Gonzalez' argument that he should receive a departure for cultural assimilation.  See Third Addendum to the Presentence Report at 1, disclosed November 28, 2007 ("Third Addendum").  The USPO noted that the only departure that considers "cultural assimilation" is U.S.S.G. 5K2.0, See Third Addendum at 1.  The USPO determined that, after reviewing Herrera-

Gonzalez' past criminal conduct, and taking into account that reducing his sentence will not return Herrera-Gonzalez to his family in the United States, a departure under U.S.S.G. § 5K2.0 is not warranted. See Third Addendum at 2. On January 2, 2008, the USPO determined that departure based on U.S.S.G. § 5K2.11 is not warranted, because Herrera-Gonzalez is not "outside of the heartland of cases [involving] similarly situated defendants because many defendants who are deported to Mexico have family members who remain in the United States and who are financially and emotionally burden[ed] as the result of the deportation." Fourth Addendum at 1, disclosed January 2, 2008.

On January 17, 2008, Herrera-Gonzalez posted a letter he wrote to the Court. See Translation of Letter from Simon Herrera-Gonzalez to the Court (posted January 17, 2008), translated by M. Kagan, Federally Certified Court Interpreter. Herrera-Gonzalez asked the Court to take note of his brother's recent death. See id. at 3, 5.

The Court held a sentencing hearing on January 18, 2007. The parties were in agreement that Herrera-Gonzalez' criminal history was overstated under U.S.S.G. § 4A1.3. See Transcript of Hearing at 4:3-10 (taken January 18, 2008)("Tr.")(Walz, Court & Brawley).[1] Herrera-Gonzalez contended that departures based on cultural assimilation and family ties was warranted because of how long he has been in the United States. See id. at 5:20-22 (Walz). The United States noted that Herrera-Gonzalez chose not to accept a Fast-Track plea agreement, although he was initially eligible for one. See id. at 19:22-20:3 (Brawley). The United States conceded that, if the Court believed a variance to a sentence of 37 months was appropriate, then the United States would not oppose that sentence, because it would be at parity with what Herrera-Gonzalez would have received if he had

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

taken a Fast-Track plea agreement. See id. at 20:1-12 (Brawley). The United States noted, however, that Herrera-Gonzalez was convicted of misdemeanor use or possession of drug paraphernalia in April of 2007. See id. at 20:16-20 (Brawley).

## RELEVANT LAW REGARDING SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D). See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available

sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006).  This presumption, however, is an appellate presumption, not one that the trial court can or should apply.  See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, 591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).  Instead, the trial court must undertake the § 3553(a)  balancing of factors without any presumption in favor of the advisory Guideline sentence.  See Rita v. United States, 127 S. Ct. at 2463; Gall v. United

States, 128 S.Ct. 586, *591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).

<b>RELEVANT LAW REGARDING<br>DOWNWARD DEPARTURES AND VARIANCES</b>

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory Guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

    **1.**    **Law Regarding Departures Based on Overrepresentation of Criminal History.**

Under U.S.S.G. § 4A1.3, the court may make appropriate adjustments if the criminal history is overstated.

> In deciding whether to depart under section 4A1.3, the district court must specifically address the adequacy of a defendant's criminal history category as it reflects both the defendant's past criminal conduct and likely criminal future.  The purpose of section 4A1.3 is to allow a district court to deviate from the otherwise applicable [G]uideline range where a defendant's criminal history, likelihood of recidivism, or both differ significantly from the typical offender for whom the applicable criminal history category was formulated.  In other words, a district court may depart when a defendant's criminal past or likely criminal future removes the defendant from the heartland of the applicable criminal history category.

United States v. Collins, 122 F.3d 1297, 1304 (10th Cir. 1997), superseded by statute as stated in United States v. Jones, 332 F.3d 1294, 1299 (noting that "[t]he amendments contained in the PROTECT Act  modify the unitary abuse of discretion standard; the applicable analytical framework, however, remains generally consistent with the four-part test set forth in Collins."). "The Guideline contemplates that criminal history might be overstated if there is no other evidence of prior criminal behavior in the intervening period [between two convictions.]"  United States v.

<u>Alvarez-Pineda</u>, 258 F.3d 1230, 1239 (10th Cir. 2001)(internal quotations omitted and alterations in the original).  "Section 4A1.3  of the Sentencing Guidelines authorizes a downward departure from the guideline range if a defendant's criminal history is overstated."  <u>United States v. Caldwell</u>, 82 F.3d 427 (Table), Nos. 95-1003, 95-1023, 1996 WL 185749 at * 6 (10th Cir. April 17, 1996).

## 2.   <u>Law Regarding Departure Based on Cultural Assimilation and Family Ties</u>.

Even when the Sentencing Guidelines were considered mandatory, a sentencing court had authority to consider claims of cultural assimilation and family ties as factors meriting a downward departure because the Guidelines do not prohibit such factors from being considered.  <u>See</u> <u>United States v. Lipman</u>, 133 F.3d 726, 730 (9th Cir. 1998).  Because the Guidelines do not mention cultural assimilation and family ties, however, a sentencing court can use them as a basis for departure only  when the specific circumstances of a particular case take it from the heartland of cases that the Guidelines contemplate.  In most cases, "departures based on grounds not mentioned in the Guidelines will be highly infrequent."  <u>Koon v. United States</u>, 518 U.S. 81, 95-96 (1996).  Although such departures may be infrequent, under U.S.S.G. § 5K2.0, unusual circumstances may be sufficiently extraordinary that they are accepted as a basis for departure and thereby become relevant to sentencing.  <u>See</u> <u>Koon v. United States</u>, 518 U.S. at 95-96.

Under U.S.S.G. § 5H1.6, the court may make appropriate adjustments if the defendant's family ties and responsibilities present an extreme circumstance that sets the defendant apart from others. <u>See</u> <u>United States v. Gauvin</u>, 173 F.3d 798, 807 (10th Cir. 1999)("[A] district court may depart based on family circumstances 'only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.'")(quoting <u>Koon v. United States</u>, 518 U.S. 81, 96 (1996)), <u>cert.</u> <u>denied</u> 528 U.S. 906

(1999).  Therefore, although a sentencing court may consider both cultural assimilation and family

ties as factors warranting downward departure from the Guidelines, it should do so only when facts

underlying those factors are sufficiently unusual in the court's opinion to remove the case from the

conduct that the Guidelines contemplate.

The Tenth Circuit has referred to the cultural-assimilation departure approvingly in several

opinions.  See U.S. v. Marquez-Olivas, 172 Fed.Appx. 855, 857 (10th Cir. 2006)(affirming district

court's denial of motion for downward departure based on cultural assimilation and extraordinary

family ties); U.S. v. Gonzalez-Lopez, No. 01-4231, 41 Fed.Appx. 286, 287 (10th Cir. 2002).  Other

Circuits have formally endorsed this particular departure ground.  See U.S. v. Rodriguez-

Montelongo, 263 F.3d 429 (5th Cir. 2001); U.S. v. Lipman, 133 F.3d 726 (9th Cir. 1997).  In the

Tenth Circuit, a departure on the these grounds must be supported by "extraordinary circumstances."

United States v. Marquez-Olivas, 172 Fed.Appx. at 857.

Pursuant to U.S.S.G. § 5H1.6 Family Ties and Responsibilities, family ties and

responsibilities are not ordinarily relevant in determining whether a sentence should be considered

outside the applicable Guideline range and whether a departure may be warranted.  See U.S.S.G. §

5H1.6.  In extraordinary circumstances, however, the court has the authority to depart downward.

See United States v. Gauvin, 173 F.3d at  807 (stating that a district court may depart based on

family circumstances "only if the factor is present to an exceptional degree or in some other way

makes the case different from the ordinary case where the factor is present." (citing Koon v. United

States, 518 U.S. at  94); United Sates v. Pena, 930 F.2d 1486, 1494-95 (10th Cir. 1991)(stating that

a district court may depart downward from the Guidelines "only if it finds there exists mitigating

circumstances of a kind, or to a degree, not adequately taken into consideration by the sentencing

commission in formulating the guidelines."); United States v. Johnson, 964 F.2d 124, 128 (2d Cir.

-11-

1992) (noting that "[e]xtraordinary circumstances, however, are by their nature not capable of adequate consideration. They therefore may constitute proper grounds for departure.").

The requirement that the family circumstances be extraordinary does not mean that they must be extra-extraordinary; they must only be outside the ordinary. See United States v. Vidrickson, 998 F.2d 601, 602-603 (8th Cir. 1993)(recognizing that, "[o]rdinarily, family ties are not relevant in determining whether to depart from the Guidelines sentencing range.  Nevertheless, the court may depart whenever there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.") (internal citations and quotations omitted). Application Note (A) for U.S.S.G. § 5H1.6 states: "In determining whether a departure is warranted under this policy statement, the court shall consider the following non-exhaustive list of circumstances: (i) The Seriousness of the Offense; (ii) The involvement of the offense, if any, of members of the defendant's family; (iii) The danger, if any, to members of the defendant's family as a result of the offense." U.S.S.G. § 5H1.6, cmt. at 1(A).

Application Note B(ii) states that departure may be warranted where the loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. See U.S.S.G. § 5H1.6, cmt. at B(ii).  For example, that the defendant's family may incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such a hardship or suffering is of a sort ordinarily incident to incarceration.  In United States v. Jones, 158 F.3d 492, 499 (10th Cir. 1998), the Tenth Circuit found that, where the wife was employed and capable of caring for the children, the district court abused its discretion by departing downward from the Sentencing Guidelines in part because of the economic hardship incarceration would inflict upon the defendant's family. In United States v. Reyes-Rodriguez, 344 F.3d 1071, 1073-74 (10th Cir.

2003), the Tenth Circuit found that a downward departure for extraordinary family circumstances was not warranted for a defendant convicted of illegal reentry, even though he had sent every other paycheck to his parents, who lived in extreme poverty in southern Mexico, and his mother had heart problems.  The Tenth Circuit found that the support the defendant would be able to provide his parents after serving his sentence and after being deported to Mexico was not so specialized that only he could provide it. See United States v. Pena, 930 F.2d 1486, 1495 (10th Cir. 1991)(upholding departure from Guideline range of 27 to 33 months to five years probation with six-months community treatment center based on family circumstances); United States v. Gauvin, 173 F.3d at 806-808 (stating that, where defendant supported four young children and wife, worked fourteen hours a day, forty-four miles from home, and had no extended family to take custody of the children, departure of 3 levels to 37 months, was warranted under § 5H1.6 to minimize the impact on the defendant's children).

The United States Court of Appeals for the Second Circuit in United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991), noted the special situation of a close-knit family whose stability depended on the defendant's continued presence. The Second Circuit let stand the sentencing court's finding that incarceration in accordance with the Guidelines might well result in the destruction of an otherwise strong family unit and the sentencing court's conclusion that these circumstances were sufficiently extraordinary in that case to support a downward departure. See United States v. Aguirre, 214 F.3d 1122, 1127 (9th Cir. 2000)(affirming that it is within the district court's discretion to depart downward 4 levels for extraordinary family circumstances "based on the fact that there is an 8 year old son who [has] lost a father and would be losing a mother for a substantial period of time"), cert. denied, 531 U.S. 970 (2000); United States v. Milikowsky, 65 F.3d 4, 8 (2d Cir. 1995)("Among the permissible justifications for downward departure . . . is the need, given

appropriate circumstances, to reduce the destructive effects that incarceration of a defendant may have on innocent third parties."); United States v. Johnson, 964 F.2d at 128-30 (granting a departure and stating that "we are reluctant to wreak extraordinary destruction on dependants who rely solely on the defendant for their upbringing.").

> ### 3.    Law Regarding Departure Based on Lesser Harms.

U.S.S.G. § 5K2.11 provides:

> Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of a mercy killing. Where the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted. For example, providing defense secrets to a hostile power should receive no lesser punishment simply because the defendant believed that the government's policies were misdirected.
>
> In other instances, conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue. For example, where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program, a reduced sentence might be warranted.

Id.  A departure under U.S.S.G. § 5K2.11, for "Lesser Harms" is unavailable in illegal reentry cases, because illegal reentry is not a specific intent crime. As the Tenth Circuit recently stated in United States v. Prado-Jimenez, 223 Fed.Appx. 818 (10th Cir. 2007): "This court has held that § 5K2.11 departures are not allowed in illegal reentry cases because the crime of illegal reentry is not a specific intent crime."). 223 Fed.Appx. at 821 n.4.  See United States v. Portillo-Alvarez, 223 Fed.Appx. 821, 823 n.2 (10th Cir. 2007)(same); United States v. Barajas-Garcia, 229 Fed.Appx. 737, 741 (10th Cir. 2007)("Moreover, this court has determined 8 U.S.C. § 1326, regarding the criminal conduct of illegal reentry under which Mr. Barajas-Garcia was convicted, requires no specific motive or intent, so that an alien's intent, motivation, or reasons for illegal entry into the

country, including family ties and responsibilities, cannot serve as a basis for departure for the purpose of reducing a sentence."); United States v. Hernandez-Baide, 392 F.3d 1153, 1157-58 (10th Cir. 2004)("Given our determination § 1326 requires no specific motive or intent, we join those circuits which have considered § 5K2.11 in application to § 1326 and held that because § 1326(a) is not a specific intent crime, an alien's intent, motivation or reason for illegal entry into the country cannot serve as a basis for departure under § 5K2.11."), vacated by Hernandez-Baide v. United States, 544 U.S. 1015 (2005), opinion reinstated by United States v. Hernandez-Baide, 146 Fed.Appx. 302, 305 (10th Cir. 2005)).

## ANALYSIS

The Court was before Booker -- and remains after Booker -- authorized to consider the relevancy of the factors that Herrera-Gonzalez raises as grounds for departure. The Court believes that Herrera-Gonzalez' criminal history is overrepresented, and will depart under U.S.S.G. § 4A1.3, categorizing Herrera-Gonzalez' criminal history as III instead of IV. The Court believes, however, that, if Herrera-Gonzalez is entitled to further departure from the advisory sentencing Guideline range based on the reasons that he has provided, more illegal reentry defendants would qualify for a departure than those who would not. The exception would swallow the rule. The Court also believes, however, that it is appropriate to grant Herrera-Gonzalez a variance from the Guideline sentence to avoid disparity between Herrera-Gonzalez' sentence and those of other defendants with similar criminal backgrounds who have committed similar crimes. Thus, the Court grants Herrera-Gonzalez a variance.

## I.    HERRERA-GONZALEZ' CRIMINAL HISTORY IS OVERREPRESENTED.

Herrera-Gonzalez argues, pursuant to U.S.S.G. § 4A1.3(b)(1), that his criminal history is overrepresented, and asserts that he is more similar to defendants categorized in criminal history

category III rather than a criminal history category of IV.  See Sentencing Memo. at 3.  As noted

in paragraph 55 of the PSR, the USPO also believes that, pursuant to U.S.S.G. § 4A1.3, Herrera-

Gonzalez' criminal history is overrepresented.  See PSR ¶ 55, at 17.  It also appears to the Court that

Herrera-Gonzalez is more similar to defendants categorized in criminal history category III rather

than those in criminal history category IV.

The  Court determines that Herrera-Gonzalez' criminal conduct is overrepresented.  The

proper criminal history category should be that of III rather than a criminal history category of IV.

With a criminal offense level of 21 and a criminal history category of IV, Herrera-Gonzalez'

sentencing range is 46 to 57 months.[2]

## II.    A DEPARTURE BASED ON CULTURAL ASSIMILATION AND FAMILY TIES IS NOT WARRANTED.

The Court believes that extraordinary circumstances are required to warrant a  departure

based on a defendant's cultural assimilation and family ties.  The Court acknowledges that the

Guidelines authorize departure on those grounds, but does not think Herrera-Gonzalez'

circumstances are extraordinary.  Many defendants who are similarly situated to Herrera-Gonzalez

have spent significant portions of their lives in the United States, and have family members in the

United States and Mexico.

The Court notes that Herrera-Gonzalez has six prior convictions.  The Court is troubled by

the fact that Herrera-Gonzalez was granted permanent resident status in 1977, but had it revoked

---

[2]   In his sentencing memorandum, Herrera-Gonzalez states that, if the Court were to determine his criminal history should be III, then his Guideline sentencing imprisonment range should become 37 to 46 months.  See Sentencing Memo. at 3.  This Guideline imprisonment range, however, is incorrect.  Herrera-Gonzalez' offense level is 21.  An offense level of 21 combined with a criminal history category of III results in a Guideline imprisonment of 46 to 57 months.  See Second Addendum at 1; Response at 2 n.1; Reply at 2 n.1.

-16-

following felony drug convictions.  The Court believes that Herrera-Gonzalez had the opportunity to truly assimilate into United States culture at the time he was granted permanent resident status, but instead was convicted for a number of serious felonies.  Even though the Court believes the Guidelines authorize departure on the basis of cultural assimilation and family ties, the Court does not believe that Herrera-Gonzalez' facts and circumstances warrant a departure on these grounds.

III.    **THE COURT WILL NOT DEPART DOWNWARD FOR LESSER HARM.**

While the Court is sympathetic with Herrera-Gonzalez' desire to return to the United States to take care of his family, the Tenth Circuit has cautioned district courts about departing on this ground in illegal reentry cases.  See, e.g., United States v. Prado-Jimenez, 223 Fed.Appx. at 821 n.4 ("This court has held that § 5K2.11 departures are not allowed in illegal reentry cases because the crime of illegal reentry is not a specific intent crime.").  Moreover, the Court believes that the Sentencing Commission adequately took this circumstance into account when it formulated the Guidelines resulting in Herrera-Gonzalez' advisory Guideline range.  There are many dependents on both sides of the border, and there is a financial and emotional burden on everyone involved in undocumented immigration cases.  The Court believes a departure is authorized under the Guidelines on these grounds, but cannot distinguish Herrera-Gonzalez' case from other similarly situated defendants.  The Court exercises its discretion not to depart, because it believes that Herrera-Gonzalez' case falls within the heartland of the cases that the Court sees.

IV.    **A VARIANCE FROM THE ADVISORY GUIDELINE RANGE OF 46 TO 57 MONTHS IS WARRANTED.**

The Court has carefully considered all the factors in § 3553(a) in imposing a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a).  In considering all the factors of  § 3553(a) the Court believes that Herrera-Gonzalez' situation is one

that counsels for a variance.  The Court, therefore, will vary from the Guideline sentence.

### A.    THE NATURE AND CIRCUMSTANCES OF THE OFFENSE.

Illegal re-entry is punishable for a period of up to twenty years in prison, and it has one of the harshest enhancement schemes in the Sentencing Guidelines.  See 8 U.S.C. §1326(a) and (b); U.S.S.G. § 2L1.2.  The potential penalties associated with illegal re-entry signal congressional intent that it should be considered a serious crime and not merely a regulatory offense.  Herrera-Gonzalez suggests that his offense is relatively minor; however, the Sentencing Commission has chosen to classify undocumented immigrants so severely because the Commission believes that they represent a danger to the American public.  While Herrera-Gonzalez returned to the United States to take care of his dying brother and of his own family, these circumstances do not indicate that this factor -- the nature and circumstances of the offense -- counsel for a variance.

### B.    HISTORY AND CHARACTERISTICS OF THE DEFENDANT.

Herrera-Gonzalez argues that he returned to the United States because he came to this country at the age of 18, and because he desired to be with his family, including not only his wife, children, and stepchildren, but also his elderly parents and his siblings.  See Sentencing Memo. at 6-7.  Herrera-Gonzalez has four children, all minors who need his financial and fatherly support.  See id. at 6.  Herrera-Gonzalez does not want to be an absentee father.  See id.

Although these motives and ambitions are admirable, many undocumented immigrants enter or return to the United States for economic reasons.  Herrera-Gonzalez' family situation is not significantly different from most defendants charged with illegally re-entering the United States after deportation.  If an economic motivation alone were sufficient to justify a variance from the advisory sentencing Guideline range, more defendants would qualify for the variation than those who would not.  Furthermore, many undocumented immigrants are separated from their family

members, either by coming to the United States while their family remains in their country of origin, or by being deported while they have family members that reside in the United States.  This factor does not significantly distinguish him from other individuals who are similarly situated.

      **C.**    **THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT.**

Herrera-Gonzalez represents that "he accepts the realization that he can not ever re-enter the United States."  Sentencing Memo. at 6.  Herrera-Gonzalez contends that his present incarceration has served as "a severe and valuable lesson and constitutes sufficient punishment deterring him from entering the United States in the future."  Id. at 7.  Herrera-Gonzalez contends that the prospect of him committing future crimes is "nil."  Id.  Herrera-Gonzalez represents that he "desires to conclude his sentence as soon as possible, be deported to Mexico, and [ ] continue on with his life even though he will be forced to live in Mexico."  Id.  Herrera-Gonzalez insists that the public should not fear future crimes from him.  See id.

Herrera-Gonzalez' prior entanglements with the legal system have not persuaded him to refrain from returning to the United States.  His felony conviction on this offense will serve as a sanction to provide just punishment. Unfortunately, because of his actions, he will be away from his family, and his family will struggle financially without him.

The sentencing Guideline range, as set forth in the PSR, addresses the seriousness of the offense, promotes respect for the law, and provides just punishment.  Thus, while the separation from his family and the financial hardship they will suffer weighs against a Guideline sentence, the other tenets of this factor weigh in favor of a Guideline sentence.

**D.      THE NEED FOR THE SENTENCE TO AFFORD ADEQUATE DETERRENCE AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES.**

The Court notes that one of Herrera-Gonzalez' prior felony convictions is now over seventeen years old.  See PSR ¶¶ 19, at 5.  Any punishment imposed on Herrera-Gonzalez should provide an adequate deterrence to future criminal conduct and also protect the community from further crimes.  In this case, the Court believes that a punishment of 38 months of incarceration will adequately deter Herrera-Gonzalez from future illegal activity within the United States.  Such a sentence will also protect the public from the danger Congress has indicated Herrera-Gonzalez poses.

**E.      THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES BETWEEN DEFENDANTS WHO HAVE COMMITTED SIMILAR CRIMES.**

Most defendants charged with illegally entering the United States after deportation could make arguments similar to the ones that Herrera-Gonzalez makes. Unfortunately, many individuals who illegally enter into the United States do so to support their family.  Additionally, some of these individuals have similar mental incapacities as those suffered by Herrera-Gonzalez.  While Herrera-Gonzalez' situation is compelling, his story alone is not sufficient to warrant a variance.

The Court, however, is concerned with avoiding unwarranted sentencing disparities between defendants who have committed similar crimes.  On one hand, the Court acknowledges that most defendants who are charged with illegal re-entry into the United States could make the same arguments as Herrera-Gonzalez and thus believes that no variance is appropriate. On the other hand, the Court acknowledges that the Fast-Track Program, which allows for a 2-point offense level deduction, was available to Herrera-Gonzalez, but that he chose not to take the Fast-Track plea agreement and instead kept his right to argue for a lesser sentence and to appeal. The Court,

therefore, believes it is important to take into consideration the value of the Fast-Track plea agreement as well as the value of Herrera-Gonzalez' right to appeal, and acknowledges that most defendants in Herrera-Gonzalez' position would be receiving a lesser sentence because of a Fast-Track agreement.   Because Herrera-Gonzalez' arguments could be made by most defendants charged with illegal re-entry, but because Herrera-Gonzalez's Guideline sentence is different from most defendants that committed similar crimes and have similar criminal backgrounds,  the Court believes that the similarly situated factor does not point in a clear direction.

The Court understands that it needs to recognize the distinction that Congress has put in place for Fast-Track programs by recognizing the value of the program both to the defendant and to the United States.  In taking those values into consideration, the Court believes that a sentence at the same level as an individual who accepted  the Fast-Track Program is inappropriate -- in this case, a Guideline range of 37 to 46 months -- because it would fail to recognize any distinction between those who do and do not accept that agreement. The Court is also concerned, however, that a sentence of 46 months would not reflect the sentences of people who have committed similar crimes  and have similar records to Herrera-Gonzalez. The Court believes, therefore, that some variance is appropriate.  Taking into consideration this factor, as well as the other variance factors the Court has discussed herein, the Court believes that a sentence of 38 months balances these factors best. The Court will therefore impose a sentence of 38 months incarceration.

**IT IS ORDERED** that the Defendant's request for a downward departure on criminal history category is granted.  The Defendant's other requests for departures are denied.  The Court will grant his request for a variance and sentence Herrera-Gonzalez to 38 months.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  Acting United States Attorney for the
  District of New Mexico
Kimberly A. Brawley
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Jerry A. Walz
Alfred D. Creecy
Walz and Associates
Cedar Crest, New Mexico

      *Attorneys for the Defendant*